We'll go on to the next case on the oral argument calendar, please. Evanston Insurance Company v. Footprints Behavioral Interventions, 23-55706. Good morning. Good morning, Your Honors. May it please the Court. My name is Soren Wirasuria, and I represent the appellant, Footprints. Your Honors, I would like to focus the Court on the central issue in this appeal and a matter very pertinent to that. What facts did Footprints, the insurer, have at its disposal that would lead it to believe that claims against itself were likely? And this question requires a two-part inquiry because we have direct liability claims and we have vicarious liability claims. As to direct liability, the question must be, what facts did Footprints learn that led it to believe we did something wrong here or we failed to act in a wrongful fashion that would cause someone else's harm? Now, Evanston, as the insurer, had the burden at the underlying case to present admissible, indisputable facts showing that Footprints had such knowledge. Evanston attempted to do as much. Footprints believes Evanston failed, but the District Court agreed. So, I'm going to focus on the… At the time that Footprints fills out the insurance application, Kim had already been convicted and they knew that. That is correct, Your Honor. And, nonetheless, they answer no to question seven, which is, are you aware of any circumstances which may result in a malpractice claim or suit being brought against you or any of your employees? They know there's been a conviction of one of its employees for having molested a client, raped a client, and they say no. How can that be a truthful answer? It's a truthful answer because from a direct liability claim, Your Honor, there's no evidence that Footprints knew about this behavior before it happened, that Footprints failed to act to stop the behavior. Well, wait, wait, wait. It's a claims-made policy, as you know, of course. And so, to go back to Judge Fletcher's question, first of all, she had been convicted and I think three of Footprints' employees testified against her at the trial. Your Honor… Is that right? They did testify, Your Honor. However, they didn't testify… Sorry, I can't… Did you say did or did not? They did testify. Okay. Correct. They did. However, they did not testify about her criminal acts. They testified about Footprints' policies and procedures relating to when an employee must report to Footprints that this sort of behavior is happening. Did anybody who testified at the criminal trial serve in a supervisory position? Not that I'm aware of, Your Honor, no. Okay. So, back to… I think you were… I didn't mean to divert you. They answered, as Judge Fletcher's just inquired. Yes. And you think they answered truthfully, that they did not have a reason to anticipate that a claim was going to be made, a malpractice claim was going to be made against them? Correct, Your Honors, because a reasonable insurer in Footprints' position has to consider the facts and the law. The facts don't show that Footprints was aware of anything that Footprints did wrong in the course of this happening. Footprints wasn't aware of this until the teacher at the 11th hour came and told them this. But the question is not, are you going to be liable? The question is, are you going to be sued? Well, sure. It's the same analysis, Your Honor. It's not the same analysis. The insurer was asking, any reason you think you might be sued? Yeah, but… They answered, no. And one of their employees had been convicted. Your Honor, but that's the problem here. We're focusing on the criminal conviction of an employee, and what about a criminal conviction would lead Footprints to believe that it would get sued, that claims were likely? We have to look at the… I'm going to tell you what you already know, but I'm saying it this way because I want you to answer. Yes, it's a criminal conviction of an employee for something the employee did during the course of employment. This is not, he went out and was burgling houses in his spare time. Well, Your Honor, under Oregon law, it wasn't during the scope and course of employment. That's the exact problem. There's a three-part analysis that you have to use to determine whether something was during the scope and course of employment. At least two factors are not met. Counsel, you're going to the merits. You're going to the merits, and that's what Judge Fletcher just reminded you of. It's not a question of any reason you think you're going to be found liable. Any reason you think somebody's going to sue you and prevail. The question is just simply, do you have any reason to think you're going to be, I'm paraphrasing of course, but do you have any reason to think you're going to be sued? Well, Your Honor, it wasn't the question, the standard isn't any reason. It says, is a claim likely? Likelihood requires the utmost certainty. Likelihood, what? Likelihood requires the utmost certainty. The language of the policy is, well, there's two things at play here. Do you think you may be sued for malpractice? And two, under the policy language, are claims likely. Both of those require... And this was an allegation that in the course of this patient-therapist relationship, this individual sexually assaulted a minor. Correct, Your Honor, but the focus is not on the pleadings. The focus needs to be on what did Footprints as the insured know at the time it renewed the application. Okay, what did they know at the time? It knew that a former employee secretly raped and did these horrible acts to this minor. That's all Footprints knew. Those facts would not lead a reasonable insurer... Well, they also knew that that minor was a patient. Understood. And she had access vis-a-vis this therapist-patient relationship, right? They knew that, surely. However, it did not know that the teacher, or the therapist, I should say, secretly went ahead and was alone with this minor, that the therapist was touching this minor. None of those are permitted by Footprints' protocols. In fact, all of that's prohibited. A parent must always be present, and what this therapist did was well above and beyond her job duties. It sounds like there might be a good defense at trial, but it doesn't tell me that there's not likely to be a lawsuit. Yeah, can I, let me back up a little bit. It seems like the key issue here, and it's really important to your case, is I think you have a strong argument that there's not necessarily a basis, you know, a legal basis for a successful lawsuit against your client, or at least that there would be a, on all we really need is that there would be a factual dispute as to that, right? If that is the standard, that somebody would have a legitimate basis to bring a lawsuit. But we live in a litigious society, and I think what you're hearing from the bench is it's all of our intuition, and not just probably for lawyers, that if something like this happens, even if legally there's no basis for somebody to be sued, that they're probably going to get sued, right? Because if nothing else, hell marry, maybe they'll find a way. So what do we do with that? That's my struggle in this case. And so for you to like just keep pounding the table and saying there was no legal basis doesn't really help me, and I don't know about my colleagues, but with that, what do we do with the fact that even if I agree with you that there was no legal basis, or at least there's, it was, there's a possible factual dispute as to whether your client could have believed there was no legal basis. Seems like a reasonable person would have thought, yeah, we're probably going to get sued. Now the good news is we're probably going to win that lawsuit, but we're probably going to get sued. What do you do with that in question number seven, which says, are you aware of any circumstances that may result in a malpractice claim or suit being made or brought against you? Well, respectfully, your honors, I believe what you described there is really more of a subjective standard that's being applied, whereas it is an objective standard. Why would a reasonable insured automatically believe that, hey, anytime anything wrong happens? Yeah, that's the best argument you have for your position, I think, which is, which is if the standard is just like whether you think you might be sued regardless of the merit of the lawsuits, that turns this thing into sort of a hair trigger, right? Like that anytime, especially if we live in a litigious society, which we do. So I think that's your best argument. But the problem is it doesn't say, are you aware of any circumstances that may result in a legitimate or a meritorious or possibly meritorious claim. It just says a claim, and so that's the struggle. My apologies, your honor. It actually says malpractice claim. So it's very narrow, right? We're talking about professional negligence. So once again, sure, in the realm of possibility, would an insured think that, yeah, we might get sued based on how society is sure, but what facts there would lead reasonable insured to say, we have not exercised our professional duty of care. And one has to look at the law, your honors, because without looking at the law, a reasonable insured has no guidance as to how to contemplate the likelihood of claims, your honors. You can't just look at the facts in a vacuum. It depends on jurisdiction, for one thing. I mean, where you are, the claims that could be triggered, that's all dependent on what the facts and the law says, and that's why one must contemplate. You know, you just said that malpractice is a, which is the word here in the policy question, is narrow. And I would, actually, I wondered about that question. And with that question in mind, I read your brief. You made no argument in your brief that malpractice is a narrow word, and therefore, this is not within the scope. Your honor, I didn't say malpractice itself is a narrow word, but I said that the question is limited to malpractice claims and that the facts essentially don't show a wrongdoing by footprints that it would lead it to believe we have made mistakes that would likely result in malpractice claims against us. That argument was indeed in the moving papers as well as the reply. And again, if we don't go to an objective standard where one must contemplate the law, your honor, then it's a matter of, well, let's say, you know, a parent sees a therapist raising a voice at a child and the child uncontrollably screams for the next hour. Now, should footprints now report that in renewing the application because now you have a distraught child and now a claim might be possible? Well, I think I'm telling you something you already know. The reason the insurance company is asking these questions is trying to figure out, okay, what's the risk that the insurance is going to have to pay out either to defend or maybe to pay out on a successful claim? And if you answer yes, I think the insurance company comes back and says, oh, well, tell me about it. And once you've told him about it, the insurance company is able to assess the risk. The insurance company is saying, you just didn't give me a clue so that I couldn't figure out, okay, what kind of a lawsuit is it that might be coming down the pike? And you just, you said, nope, no lawsuit coming. And I do want to point the court to something really important about this question, which the district court found was that the question and the use of the term employee in that question referred to only current employees. I bring that up now because that is a secondarily important point. Evanston did not challenge that determination, which means for the district court, at least the question was limited to then existing employees. That's a second layer of confusion for footprints. Again, who is the insurer? But it's not because the question asks whether you have reason to think it's likely that you or your employees are going to be sued. So, footprints. Okay, sure. As a supervisor, in a supervisory capacity, as the employer, it's good to be sued. And again, we get back to that point, Your Honor, what fact, the fact of heinous crimes, no one doubts that these are heinous crimes, they were terrible. It's awful what happened. But that does not lead, that should not lead a reasonable insurer to believe it's going to get sued. And to say that Evans and the footprints should have disclosed this, again, it puts this insurmountable burden. Again, every time something goes wrong now, footprints must report that in the course of renewing the application. It's just not that extreme. It's just not that extreme. We're not suggesting every time something goes wrong, it has to be reported. This is a pretty extreme example. A criminal trial had been had. It did involve this therapist-patient relationship. One of their therapists, one of their patients, and three of their employees testified at that trial. It's pretty extreme. But, again, Your Honor, those employees did not testify that they saw any of the wrongdoing. They testified about policies and procedures. And what, again, where does the law say that the extreme nature or the nature of the underlying allegations, again, in a vacuum, must lead someone to believe that they're likely to be sued for malpractice? And I think the Court's focusing on the serious but true nature of what happened. And, again— What makes it that much more likely they're going to be sued, especially because a minor was involved. And I think we're just beating a dead horse. But— Understood, Your Honors. I did want to respond to your rhetorical question. Okay. And, well, lastly, I'm going to go ahead and reserve the time, then. Sure. Thank you. You bet. We'll hear from opposing counsel. Thank you, Your Honor. Good morning, Your Honors. My name is Michael Perlis. I have the honor of representing Evanston. And may it please the Court. There are two things I'd like to address. First, this issue of the substantive law. The problem with counsel's argument is that there's an Oregon Supreme Court case decided in 1999, the Fearing case. And it involved a priest and a child where, because of the priest's capacity in the church, he had access to the child and, over time, began to make sexual advances to the child. The Oregon Supreme Court in 1999 had no difficulty allowing, as a matter of law, the church to be held liable on a respondeat superior basis on the theory that no employer generally authorizes an employee to engage in these kinds of acts. They're done by the employee and, in this case, by the priest within the scope of his employment. Just as here, the complaint alleged that Ms. Kim acted within the scope of her employment. I'm not sure Fearing helps you that much because of the procedural posture it was in. And if I recall, the Oregon Supreme Court basically just said that one plausible inference was that the priest was acting within the scope of his employment, but didn't decide that it necessarily was. And then sent it back, presumably for a jury to figure that out. Am I correct? The Court sustained the concept of liability. So you're saying it could be liable. Correct. And so is my description correct of what's going on? Yes. And so if one plausible inference, it could be. I think in some ways your opposing counsel is making his job a little bit harder because his whole thing is to just try to get this to go to a jury, right? Like, you know, not to get past this. And so why doesn't Fearing help him in that if a plausible inference is that you could have liability, then a plausible inference could be that the priest might not be liable, right? And so subjectively, why would he necessarily have to think that they would have malpractice liability here? Because counsel's argument basically is it's impossible under Oregon law, under these circumstances, for there to have been liability on the part of footprints. What the Oregon Supreme Court said, it's not impossible at all. It is potentially possible. But if one reasonable inference on the fact, then that's a factual determination. And, you know, based on what they're saying they knew of the facts, which is that their position is what we knew is that this person had done these things that were way outside of her scope of employment, whereas the priest was, you know, could have been different. And so we drew the inference from that that we couldn't be liable for malpractice. I have two comments to that, Your Honor. One is that the facts in each case are not dissimilar. You have a priest and a child where there's a relationship and trust and confidence built up between them based upon the priest's position with the church. No one is suggesting that the church authorizes it. I understand where you're going with that. At the end of the day, if this went to a jury to determine as opposed to, then a jury would be determining whether or not they knew certain facts that would have put them on notice so they should have put you on notice, right? And that's what a jury would be determining. Well, we can step back on that issue because, excuse me, back in 2017, Ms. Kim went to her supervisors and said, KB has been sexually assaulting me, molesting me. And the Footprints Organization filed a form required by the state and that form said that the victim, in fact, was KB, not Ms. Kim. There was a referral to the police. A lot of this is disputed as to exactly what the form said. You're presenting all this as if they're given facts, but a lot of this is disputed factually. Two of it isn't, Your Honor. It is not disputed that they referred it to the police and it is not disputed that they referred it to the licensing authorities. And I doubt a 13-year-old autistic child has any kind of license. So they were clearly referring it with respect to Ms. Kim. The issue is who the victim was. The form makes clear. Do you agree that they're disputing why they were referring? I mean, I've read the briefing in this case. I mean, my understanding is they are disputing now and we're disputing at district court as to what all of this meant. Like, they're referring it to the police. It seems like whether or not you have an employee who's doing something inappropriate or you have a client who's doing something inappropriate to your employee, it makes sense to me that you would refer that to police. You would agree with that? I would refer it to the police because the likelihood the police are going to charge a 13-year-old autistic boy is about zero. So, I guess, you know, you're relying, you're trying to rely on certain precise facts that seem to me many of them, if not all of them, are disputed as making it clear that they had to know that they would actually be liable. No, Your Honor. Because I think you probably saw from, you know, the bench's concern, as best I can read it, and, you know, I guess I can only speak for myself, it actually seems a little bit different. It's not that, like, these specific facts necessarily mean that footprints could be liable. What it is is that it's just like, yeah, footprints is probably going to get sued. Whether or not they could actually be held liable. The reason I'm, I feel like both sides are not really talking to our specific concern. That's the second point, Your Honor. They don't have to be found liable. All they have to be is sued. That's all the question said. Well, they have to be sued for malpractice. There is that. Speaking for myself, that's the strongest argument they've got. The question asks about malpractice. And, of course, it's not a negligent tort. It's an intentional tort. So what's your response to that? The policy doesn't require it to be a malpractice suit. The application says malpractice. That's what I'm talking about, sir. The policy says. I'm not talking about the policy. I'm talking about the application. That's what you're relying on. The application says malpractice suit. Correct. So what's the answer to that question? The answer to that is there is a second threshold. Can I just finish? My understanding, to make sure we. Because I think we're miscommunicating. My understanding. Paraphrase. Is that their argument is this question. This application asks us if it was likely that we're going to be. We or our employees are going to be sued for malpractice. And we answered no. And that's truthful. Because this isn't malpractice. It's criminal conduct. That's my paraphrase. But could you respond to that? Yes. Because the issue is. If there's a failure to supervise. Which is one of the allegations. That's malpractice. You have failed to discharge your responsibilities. To supervise your employee. In her care of this child. And that is malpractice. I asked if any of the folks. Who testified at the criminal trial. Were supervisors. He said no. Do you have any? I believe one of them was. There were four. Four witnesses. Not three. And she was terminated. I think immediately. Isn't that right? That's right. For failure to follow proper procedure. Presumably. Presumably by a supervisor. That's the struggle. I think in some ways. The more egregious. And we all think that what she did. Was very egregious. And the more egregious it was. What she was doing. In some ways. That cuts against your argument. Because it sort of starts to feel. Really way outside the scope of her employment. And the kind of thing. That you couldn't have seen coming. So I don't know. I mean. So your response to the malpractice point. Is that no. You can have malpractice. For not having appropriate supervision. And that makes sense. And their response to that is. Yeah. But that's a. We 100 percent thought that we had supervised. Appropriately. That we had supervised appropriately. And we knew we had. Because we're the ones that are. We know what we did. Right.  So. We did not think that there would be a claim for that. To which I think your response is. Your response would be. Kind of what you heard from the bench earlier. Which is. Come on. This is somebody who went to jail. And it was really bad. So you're going to get sued for that. Even if it's not. So I think we end up back in the place of. Does it matter. I'd be interested to hear your view on. Does it matter. The. Whether or not there would be. This whole question of whether there's any. Meritorious claims out there. Or is it just one of these things where. You just know you're going to get sued. And so. We don't care about whether or not. There's this. This whole dispute. That there seems to be between. You both. As to whether or not there could be. Meritorious claims for. Supervision. In a claims made policy with a duty to defend. One has an obligation to pay reasonable defense costs. So therefore. One of the paramount concerns of an insurer is. Are they going to get sued. And am I going to have the responsibility to spend. In some of these suits. Not necessarily this one. Tens of millions of dollars in defense costs. Sometimes defense costs. Exhaust the limits of the policy. And so therefore. We're very keen to understand. Whether or not it is likely that a claim would be made. Now the policy itself has a provision. It's a. Threshold provision. It's a precondition. That doesn't even relate. To. Malpractice claims. It's any claim. And not only is it any claim. It's an objective standard. It's not what they thought. It's what a reasonable person would think. And that ties into. The. So you both use the word objective. But I think you're using it differently. They use objective as in like. Does it have any objective and legal merit. But you're using objective. I think. Just so I understand. That. Is it. Would a reasonable person. Think. Not them. But would some. Would a reasonable person. Think you're going to be sued. Even if. This claim had no legal merit. Is that. Do I understand your use of it. That's the one we just talked about. Under the policy. Under the application. It's whether they thought. It's a subjective standard. With respect to the question. Of whether they thought. They might be sued. And I think. One thing. That's pretty helpful. In terms of case law. Is the decision. Of the. District court. In the central district. Of California. Western world insurance. Which this court affirmed. In an unpublished opinion. In. Western world insurance. There was a question. Of an FBI investigation. And an. Organizer. Make sure I understand. This is actually. Pretty important. So you're saying. Their answer. To question. Number seven. Is a subjective. Standard. Right. I understand. Subjective. In a sense. Of their awareness. Of circumstances. But then the question. Of the awareness. Of any. Circumstance. Which may result. In a malpractice claim. May. And. It seems to me. That. That part. You're saying. That that's. That's subjective. Because I don't. I think. That kind of hurts. Your position. If this whole thing. Is subjective. Then. That sounds. Awful. Like that. Should go to a jury. To decide. Their dispute. That they were aware of. Many such circumstances. Whereas. I thought your position was. At least. In part. That like. Come on. There's going to be some. Claim brought here. Well that's what the. District court said. In the case. I was just referring to. Which this court affirmed. In an unpublished decision. There was an FBI investigation. Of the organization. The FBI investigation. Was closed. Sometime later. The FBI acted. And. The answer. To the question. In the application. Was. The same as here. Nothing. The court. In the district court. Said. Come on. No one can believe. That after the FBI. Has been looking around. You're not going to get sued. And this court. Affirmed it.   And I think. That's pretty close. To what's happened here. We didn't hear. From the family. For. Two years. But. The FBI. Has been looking around. For two years. And therefore. We assume. Nothing was going to happen. But the difference is. That at the end of April. Of 2019. They became aware. Of the conviction. And they became aware. Of the conviction. Through. According to their lawyer. Reading newspapers. Among those newspapers.         And we're not going to get sued. And we're not going to get sued. And we're not going to get sued. And we're not going to get sued. And we're not going to get sued. And we didn't hear. Of anything. The policy provision. Is an objective provision. It says based on the information. You knew. The policy. You. What I think. I'm thinking of. Is the prior knowledge clause. Is that what you're talking about? Yeah that's. Correct. So you're saying the prior knowledge cause. Is objective. Because it says may lead a reasonable person. Correct. And so the question is. And this. Really goes along to the. Unpublished 9th. Circuit decision. Are referred to in the district court. Opinion. Provision. Knowing what they know. And it's pretty undisputed. Although they. Attempt to dodge. When they knew. About the conviction. And there's. Some inconsistency. In their statements. But it's undisputed. Based upon. The representations. Of their counsel. Based upon. All the things. They knew. Are you seriously. Going to suggest. That a reasonable. Person. Wouldn't anticipate. The likelihood. That somebody. Was going to sue him. Because suing. Miss Kim. Would be a waste. Of time. Since Miss. Kim. Was going to prison. For I don't know. How many years. And. Footprints. And it's insurance company. Arguably. With the people. Who could respond. To a judgment. Whether there was one. Or whether there wasn't one. The insurance company. Was going to be on the hook. For tens. Hundreds. Millions of dollars. Hundreds of thousands. You don't know. I see this. Day in and day out. What in terms of defense costs. There are. Even if. The insured. Ultimately prevails. There's. A story. Attributed. To Nicholas. Katsaback. When he was general counsel. Of IBM. In the IBM antitrust. Case. And they said. How much did it cost. To defend it. And he said. I gave my lawyers. An unlimited budget. And they exceeded it. And that's the way. Insurance companies. Look at defense costs. So we needed to know. These things. Either because. They believed it. Or because. A reasonable person. Would have believed it. Given the facts. That everyone knows. They knew. There was a. Conviction. For horrible acts. And they knew it. A month. Before they signed off. On that application. Thank you. Your honor. Anybody have any questions. I'm happy to respond. I don't. Think there are any additional questions. Thank you for your advocacy. We'll hear from the court. Thank you. Thank you. Thank you. Your honors. I want to address Mr. Perles' comments. And. A comment the court made. There are factual disputes. Throughout the record. In fact. The material facts. All of them are disputed. The district court. Did not acknowledge that in its ruling. However. That alone warrants. Denial of the summary judge in motion. Because. The district court should not be able. To make a credibility determination. Who's more correct about what. Four prints. Newer should have known. Well. There's some things that are. Undisputed. There was a criminal conviction. And your client. Knew about the criminal conviction. When it answered. No. To question 70. Am I right. That there's no dispute.  That is correct. Your honor. Four prints was aware of that. However. What. What a party's. It's not a party's. It's not a party's. It's not about what four prints. Just knew. It's about. How those facts would lead. Four principally. That claims are likely. And the jury is the one who has to determine. Hey. Would this put. These folks on alert. That they were likely to be sued. Number one. Is that. Number two. Is. You know. There. Evanston didn't really discuss the fact that. There's an issue of indemnity. And defense. The prior knowledge clause. In the sexual acts clauses. That. Evanston relied on to disclaim coverage. They're tied into the duty. To understand. So I. I'm very aware of what you're talking about. But that issue only relates to the prior knowledge. Right? That doesn't come into play. If. If 7C. Knocks out your. Knocks out your claim. Yes. 7E. That is correct. Your honor. And. But your best argument on 7C. Is that. Yes. We knew about a criminal conviction. But a criminal conviction. Does not necessarily. Tell us that we would be liable. For a malpractice claim. Are we going to be sued? Sure. But that we would be liable. For a malpractice claim. And their response is. You're a supervisor. And your response is. Yeah. The worst. The worst. The thing. The worst the conduct was. The more it seems like. It's the kind of thing that. Outside. That's your. That's your 7. Argument. And then when you get in the prior knowledge. Your argument. Your backup argument. Is that. They still have a duty to defend. Even if the prior knowledge. Walk. Knocks out coverage for the claim. Correct. Your honor. And I'll only add one fact to that. Which is. I want to remind the court. That this renewal application. Was also answered. Nearly two years after. They were first alerted. To Ms. Kim's allegations. In essence. Now. Two years have passed by. Nothing has happened. The footprints. In that time. Your honors. All they've seen is. You know. Reaffirming of what they already knew. Which is. This individual. Is accused of crimes. She's. Ultimately. Two years earlier. But. Not at all. Two years earlier. Was the conviction. The convictions. In March 2019. They answered the question. June 2019. Correct. Your honors. But the. But the point is that. You have an. Allegations. You have a charge. And you have a conviction. But. Nothing changes about the facts. Relating to footprints. And it's negligent. Omissions. Or acts. But the conviction. Turns. What might or might not. Have been a lawsuit. Into my view. An extreme likelihood. Of a lawsuit. Soon as you get that conviction. The lawsuit. Just looms. On the horizon. Anybody. Any lawyer knows that. But this is all about. What footprints should have. Ascertained. Or anticipated. It goes into its frame of mind. Which is naturally. A question of fact. Thank you for your time. Thank you all. For your advocacy. We'll take that case. Under advisement. And go on to the next case. Excuse your honor. Yes.
judges: FLETCHER, CHRISTEN, VANDYKE